IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DAWN MATTHEWS, | Case No. 6:24-cv-00068-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NEWREZ, LLC; VWH VCAT 2021-NPL6; QUALITY LOAN SERVICE, CORP.; MCCARTHY & HOLTHUS, LLP, | |
| Defendants. | |

_____

MCSHANE, Judge:

This case involves foreclosure proceedings on Plaintiff's home after she defaulted on her mortgage loan. Plaintiff alleges that Defendants acted unlawfully in seeking to collect amounts due on her loan and initiating a foreclosure. Defendants move for summary judgment. Although the Court is sympathetic to Plaintiff's circumstances—attempting to repay a mortgage and navigate complicated terms during a global pandemic—nothing in the record indicates that Defendants acted unlawfully. Rather, the evidence shows that Defendants attempted on multiple occasions to accommodate Plaintiff's circumstances, and Plaintiff failed to take appropriate steps to bring her account current. For those reasons and others discussed below, Defendants' Motions for Summary Judgment, ECF Nos. 35 and 37, are GRANTED.

## BACKGROUND

Plaintiff Dawn Matthews is an Oregon resident and homeowner who lives with her former foster child and the foster child's two children. Decl. Dawn Matthews Supp. Pl.'s Resp. 1, ECF No. 44 ("Matthews Decl."). In 2007, Plaintiff obtained a mortgage loan to purchase a home in Salem, Oregon. Plaintiff was current on her mortgage payments in March of 2020. *Id.* at 2, Ex. C.

In April of 2020, Plaintiff entered into a Forbearance Plan with the then-servicer of her loan, Mr. Cooper.[1] Decl. Chancelor K. Eagle Supp. Defs.' Mot. Summ. J. ("Eagle Decl.") Ex. B, at 1, ECF No. 36-2. Mr. Cooper approved the Forbearance Plan and sent Plaintiff documentation laying out that the Forbearance was "not a deferral, so the missed payments [were] not simply placed at the end of [her] loan." *Id.* Rather, "[o]nce the temporary Forbearance Plan ha[d] expired, the full amount that [Plaintiff] did not pay during the term of the Forbearance Plan [would] be immediately due." *Id.* This information was in bold print with a large graphic of an arrow with the words "THIS IS IMPORTANT!" pointing toward it. *Id.*

Plaintiff fails to put forth significant evidence on this next point, but the Court has surmised that Plaintiff alleges that a phone call with an unspecified person on an unspecified date led her to believe that her payments under the Forbearance Plan would be due at the end of the loan, not at the end of the forbearance period. Eagle Decl. Ex. A, at 2, ECF No. 36-1 (Plaintiff stating in her deposition that someone "swore up and down for . . . a good five minutes on the phone" that the payments would be due at the end of the note, though Plaintiff never received a writing confirming those terms); Matthews Decl. 2 ("My agreement was to have the months from April 2020 to September 2021 deferred to the end of the loan."). Every other piece of evidence before the Court,

---

[1] Notably, despite Plaintiff's allegations that she orally negotiated a deferment plan with Mr. Cooper that was never recorded in writing, Mr. Cooper is not a party to this lawsuit.

2 – Opinion and Order

all documents that were sent to Plaintiff, indicates that the Forbearance Plan did not include deferment of missed payments.

Plaintiff's initial Forbearance Plan was for three months, but at Plaintiff's request, Mr. Cooper extended the Plan through September of 2021. Eagle Decl. Ex. C, at 1, ECF No. 36-3. "The same terms and conditions that were detailed in [Plaintiff's] initial Pandemic Forbearance Plan letter [would] remain in effect during the period of the extension." *Id.*

Consistent with those terms, on September 20, 2021, Mr. Cooper sent Plaintiff a statement for $28,350.16 due October 1, 2021, reflecting the payments missed during the Forbearance Period. Eagle Decl. Ex. D, at 1, ECF No. 36-4. Plaintiff's account was then transferred to a different servicer, Defendant Shellpoint Mortgage Servicing, on October 6, 2021.[2] Eagle Decl. Ex. G, at 1, ECF No. 36-7. Thus, "[w]hen the loan transferred [to Shellpoint], it was contractually due for the April 1, 2020 payment." *Id.*

On October 23, 2021, Shellpoint informed Plaintiff that her Forbearance Plan had ended and instructed her to contact it about her repayment options. Eagle Decl. Ex. F, at 2, ECF No. 36-6. On December 7, 2021, Shellpoint informed Plaintiff that she was approved for an additional three-month forbearance for October, November, and December 2021. *Id.* On or around November 9, 2021, Plaintiff inquired about loan modification options and was approved for a modification that would allow her to pay back the past-due payments over time. Decl. Shannon Bush Supp. Defs.' Reply 2, ECF No. 46 ("Bush Decl."). But Plaintiff refused that modification, so the terms of the Forbearance Plan, including the January 1, 2022 due date for all past-due payments, remained in effect. *Id.*; *see also* Eagle Decl. Ex. F, at 2. Plaintiff attempted to make a payment for $1,492.64 on January 10, 2022, but "Shellpoint was unable to accept the payment less than the

---

[2] Defendant NewRez, LLC does business as Shellpoint Mortgage Servicing and is referred to throughout this Opinion as "Shellpoint." *See, e.g.*, Eagle Decl. Ex. F, at 4.

reinstatement amount" because Plaintiff "was not in an active workout plan," so the payment was returned. Matthews Decl. Ex. E, at 1; Eagle Decl. Ex. F, at 2.

On February 11, 2022, Shellpoint deferred 12 past due payments for the period of April 2020 through March 2021. Eagle Decl. Ex. F, at 2, ECF No. 36-6. On February 16, 2022, Shellpoint sent Plaintiff a statement for $17,981.42 due March 1, reflecting that $12,654.28 had been deferred. Eagle Decl. Ex. E, at 1, ECF No. 36-5. On March 2, 2022, Shellpoint notified Plaintiff that it approved her for a Deferment Plan in conjunction with the Forbearance Plan. Eagle Decl. Ex. K, at 1, ECF No. 36-11. Plaintiff continued sending payments that were insufficient to bring her account current and thus returned, until her August 2, 2022 payment was accepted. Future payments were mostly accepted and sometimes rejected. Matthews Decl. Ex. E, at 1.[3] At no time did Plaintiff tender the amount needed to bring her account current. *See id.*

On July 24, 2023, pursuant to Plaintiff's request, Defendant McCarthy & Holthus, LLP sent her a quote stating that $38,877.83 was needed to reinstate her loan. Eagle Decl. Ex. H, at 2, ECF No. 36-8. Plaintiff was "advised that this quote expire[d] on 8/21/23," that funds submitted after the expiration date might not be accepted, and that a new quote could be requested after the expiration date. *Id.* at 1.

A month after the expiration date, on September 21, 2023, Plaintiff tendered a check for $38,877.83 to McCarthy & Holthus for reinstatement of the loan. Eagle Decl. Ex. I, at 1, 3, ECF No. 36-9. McCarthy & Holthus returned that check and advised Plaintiff on how to request a new quote. Eagle Decl. Ex. J, at 2, ECF No. 36-10. Despite that option, Plaintiff never requested an

---

[3] It is not entirely clear to the Court why some payments were accepted while others were rejected, but it appears to be due at least in part to a change in policy at Shellpoint that allowed past due borrowers to pay back less than the full amount that was due on their loan. *See* Decl. Keith Karnes Supp. Pl.'s Resp. Ex. A, at 9, ECF No. 43.

updated quote or attempted to reinstate again. Decl. Chancelor K. Eagle Supp. Defs.' Mot. Summ. J. ("Second Eagle Decl.") Ex. O, at 9, ECF No. 47-1.

After Plaintiff failed to timely pay the amount needed to bring her account current, on October 22, 2023, Defendant Quality Loan Service Corporation initiated a Notice of Sale on Plaintiff's home, noting that Plaintiff failed to pay the $38,314.89 needed to reinstate the loan. Eagle Decl. Ex. M, at 2, ECF No. 36-13. Plaintiff did not attempt to tender that amount, either.

Instead, on January 11, 2024, Plaintiff filed this lawsuit, alleging claims under the Fair Debt Collection Practices Act ("FDCPA") and Oregon Unlawful Trade Practices Act ("UTPA") against the entities that played a role in the default of her loan and attempted foreclosure of her home. Plaintiff moved for a Temporary Restraining Order in April of 2024 to prohibit the foreclosure. ECF No. 7. Plaintiff later withdrew that motion because Defendants cancelled the foreclosure pending resolution of these claims. ECF No. 11. Defendants then moved for summary judgment on all of Plaintiff's claims, arguing that they acted lawfully. ECF Nos. 35, 37.

## LEGAL STANDARD

On a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light

most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## DISCUSSION

### I.     Plaintiff's FDCPA Claims

The FDCPA prohibits debt collectors from using false, deceptive, misleading, unfair, or unconscionable representations or means when collecting debts. 15 U.S.C. §§ 1692e, 1692f.

Plaintiff alleges that Defendants violated those statutes in the following ways: (1) Shellpoint sought to collect amounts that were deferred to the end of the loan; (2) Shellpoint falsely reported Plaintiff as delinquent to credit reporting agencies; (3) Shellpoint employed Quality Loan Service to foreclose when the only default was Shellpoint's wrongful rejection of payments; (4) Shellpoint charged late fees and commenced a foreclosure; (5) McCarthy & Holthus demanded amounts in the reinstatement that were deferred to the end of the loan; (6) McCarthy & Holthus refused Plaintiff's reinstatement payment and then allowed a foreclosure to proceed; (7) McCarthy & Holthus attempted to collect waived amounts; (8) Quality Loan Service began the foreclosure on Plaintiff's home. Compl. 6–7, ECF No. 1.

Defendants argue that Plaintiff was in default when the missed payments under the Forbearance Plan became due, because she failed to modify her loan or make payment sufficient to bring her account current. Because her loan was in default, Defendants argue that they acted lawfully in reporting her account as such and initiating foreclosure proceedings.

#### a.     Whether Plaintiff Defaulted on Her Loan

As discussed above, when Defendant Shellpoint began servicing the loan on October 6, 2021, the Forbearance Period granted by Mr. Cooper had ended, and the 18 payments missed during that period were due to Mr. Cooper on October 1, 2021. This outcome was reflected in the

terms of the Forbearance Plan and statement sent to Plaintiff in April of 2020 and September of 2021.

The *only* evidence Plaintiff has submitted to support her assertion that the April 2020–September 2021 payments were deferred is her statement that "[m]y agreement was to have the months from April 2020 to September 2021 deferred to the end of the loan." Matthews Decl. 2. Plaintiff does not state with whom she made this agreement, when she made this agreement, or where the terms of this agreement are reflected. This evidence is insufficient to create a genuine issue of material fact as to whether Plaintiff's payments were due in October of 2021 as stated by Mr. Cooper.

But Defendants also fail to put forth sufficient evidence that Plaintiff did not pay the amount due in October of 2021. They do, however, prove that Plaintiff was past due on her loan by January 1, 2022, when the Forbearance Plan ended and Plaintiff failed to modify her loan or tender the reinstatement amount. Eagle Decl. Ex. F, at 2. Accordingly, there is no genuine issue of material fact as to whether Plaintiff defaulted on her loan, so Defendants did not violate the FDCPA by acting accordingly and initiating foreclosure proceedings.

### b. Plaintiff's Other Arguments

Plaintiff additionally argues that (1) she was entitled to a forbearance under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), in which her payments were to be deferred; (2) she cured the default by tendering the reinstatement amount to McCarthy; and (3) Shellpoint waived the default by accepting Plaintiff's later payments.

First, the CARES Act established a temporary foreclosure moratorium and required mortgage servicers to grant forbearances when borrowers claimed financial hardship. 15 U.S.C. § 9056. The forbearance was required to last up to 360 days at the borrower's request. 15 U.S.C.

§9056(b)(2). Notably, the CARES Act applied only to "Federally backed mortgage loan[s][.]" 15 U.S.C. § 9056(b)(1). Defendant Shellpoint submitted evidence that "[Shellpoint] began servicing the loan on or about October 6, 2021[,] [and] at that time, the loan was no longer insured or guaranteed by the Federal Housing Authority" and thus not subject to the Act. Bush Decl. 2. Importantly, the CARES Act does not mandate the automatic deferment of payments under forbearance.

As noted above, the only evidence Plaintiff submitted to demonstrate that she was entitled to deferment under the Forbearance Plan is a vague declaration that "[her] agreement was to have" those payments deferred. To the extent that Plaintiff attempts to argue an oral modification of her contract with Mr. Cooper, she has failed to provide sufficient facts or law to allow the Court to find any binding modification based on that single statement. There is no evidence that the contract was modified or that Shellpoint was aware of that purported modification. Notably, although Shellpoint was not required to defer any of Plaintiff's payments, it deferred 12 installments and offered Plaintiff a loan modification to allow her to pay back her balance over time, but Plaintiff rejected that option. Eagle Decl. Ex. K, at 1; Bush Decl. Ex. N, at 1, ECF No. 46-1. Plaintiff has not established that her payments should have been deferred under the CARES Act.

Second, Plaintiff has failed to demonstrate that she cured the default by tendering a proper reinstatement payment. Defendant McCarthy & Holthus provided a reinstatement quote for $38,877.83 that expired on August 21, 2023. Plaintiff did not submit payment until September 21, 2023. McCarthy & Holthus returned the payment as insufficient and informed Plaintiff that she had the option to request a new quote, but Plaintiff did nothing. Plaintiff argues that, because the October 22, 2023 Notice of Sale stated a default amount of $38,314.89, Defendants acted unlawfully in rejecting as insufficient her payment of $38,877.83 on September 27, 2023. But

Plaintiff submits no evidence to contradict Defendants' evidence that $38,877.83 was insufficient as of that date.

A reinstatement quote has an expiration date because of the speed with which things change as to the loan. For example, the amount needed to reinstate changes as payments and interest come due to the lender and foreclosure fees and costs accumulate with other parties, which necessarily requires communication between those parties. *See* Karnes Decl. Ex. A, at 3–4 (Shellpoint representative testifying that the reinstatement quote would change on the first of the month when a payment came due, and that the quote would go down if the payment were accepted); *id.* at 5–6 (same noting that fees and costs from McCarthy & Holthus would have accumulated by September 21, 2023, "and those would have been added in to get the exact reinstatement amount"); *id.* at 10 (same noting that interest is added to reinstatement amount).

Between the time Plaintiff was quoted $38,877.83 on July 24, 2023 and the time that amount was rejected two months later, one payment was accepted and another rejected, interest had accrued, and foreclosure fees and costs had accumulated. *See id.*; Matthews Decl. Ex. E, at 1. Another payment was accepted in October before Defendants calculated the $38,314.89 amount due to reinstate. Although it would have been nice of Defendants to respond to Plaintiff's tender with an updated quote, or accept the check and send her a bill for the remaining amount, the Court cannot say they were legally obligated to do so. On this record, there is no genuine issue of material fact that $38,877.83 was insufficient to reinstate Plaintiff's loan on September 27, 2023.

Finally, Plaintiff argues that Shellpoint waived the default of her loan by accepting 13 monthly payments between January of 2022 and March of 2024. Matthews Decl. 2; *id.* at Ex. E. Plaintiff argues, and Defendants dispute, that Shellpoint's acceptance of those late payments constitutes a waiver of its right to foreclose after declaring default.

A creditor that repeatedly accepts late payments cannot declare default without giving reasonable notice of its intention to demand timely payments in the future and a reasonable opportunity to cure any deficiencies. *Soltis v. Liles*, 275 Or. 537, 542 (1976). Accepting late payments can waive strict compliance with terms that demand timely payments. *Id.* But failing to object to conduct that does not comply with *some* contract terms does not equate to a waiver of *all* of the contract's terms. *See, e.g.*, *Alderman v. Davidson*, 326 Or. 508, 514 (1998) (seller's regular acceptance of untimely installments did not equate to a waiver of terms that required payment of property taxes).

Plaintiff's reliance on *Soltis* is misplaced. There, a creditor could not suddenly declare default based on late payments after it had failed to object to missing and untimely payments for almost a year *before* declaring default. *Soltis*, 275 Or. at 539, 544. By contrast, here, Plaintiff does not point to a pattern of nonconforming payments before Defendants declared default in January of 2022. Rather, she points to payments that Defendants accepted *after* declaring default, which is not the kind of conduct contemplated by Oregon's waiver laws. *Id.*; *see also Chamani v. BAC Home Loans Servicing, LP*, No. 2:12-cv-01197, 2013 WL 3716417, at *3 (D. Nev. July 15, 2013) ("Where [P]laintiff's payments neither fully cured the default nor antedated the acceleration of the mortgage, [she] fails to allege a clear waiver of the right to foreclose based on the past default.").

Plaintiff has offered no evidence to create a genuine dispute of material fact as to whether Defendants violated the FDCPA in any of the ways alleged, while Defendants have shown that they followed the terms of their agreements, offered Plaintiff several options to keep her loan in good standing, and only declared default when she failed to do so. On this record, the Court finds that Plaintiff's unfortunate circumstances were caused by her own failure to take appropriate

actions, not Defendants' illegal conduct. Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's FDCPA claims.

## II.     Plaintiff's UTPA Claims Against Shellpoint and VWH

Plaintiff brings similar claims under Oregon's Unlawful Trade Practices Act ("UTPA"), alleging the following unlawful conduct: (1) VWH employed agents to collect amounts that were deferred and wrongfully rejected payments; (2) Shellpoint sought to collect amounts deferred to the end of the loan, charged late fees, and employed Quality to foreclose; (3) McCarthy & Holthus demanded deferred amounts to be paid; and (4) Quality began foreclosure on Plaintiff's home. Compl. 7–10. Defendants argue that Plaintiff has failed to prove the necessary elements of her claims and that they are time-barred.

The same evidence that absolves Defendants of liability under the FDCPA does so here, too. The Court need not reach the parties' other arguments because Plaintiff has failed to provide evidence to create a genuine issue of material fact as to whether Defendants acted wrongfully. Defendants' Motion is GRANTED as to Plaintiff's UTPA claims.

## CONCLUSION

For the reasons discussed above, Defendants' Motions for Summary Judgment, ECF Nos. 35 and 37, are GRANTED. Defendants' Motions for Summary Judgment, ECF Nos. 29 and 31, are DENIED as moot.[4]

IT IS SO ORDERED.

DATED this 11th day of June, 2025.

_____s/Michael J. McShane_____
/s/ Michael McShane
United States District Judge

---

[4] Defendants filed their first Motions for Summary Judgment by the dispositive motion deadline. ECF Nos. 29, 31. The Court then granted Plaintiff's Motion for Extension of Time to allow the parties to conduct necessary depositions and allowed the parties to file new dispositive motions. Order, ECF No. 32.